# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAMADI SOULEMAN    :
                   :
Petitioner,        :
                   :   CIVIL ACTION NO. 3:09-cv-1981
        v.         :
                   :
WARDEN MARY E. SABOL, et al.,   :   (JUDGE CAPUTO)
                   :   (MAGISTRATE JUDGE BLEWITT )
Respondents.       :

## MEMORANDUM

Presently before the Court is Magistrate Blewitt's Report and Recommendation ("R & R") of February 18, 2010 (Doc. 20), Petitioner's Objections to the Magistrate Judge's R&R (Doc. 21), Petitioner's supplement to his Objections (Doc. 22), and Respondents' Brief in Opposition to the Objections (Doc. 23). Magistrate Judge Blewitt recommended that Petitioner's Petition for a Writ of Habeas Corpus be denied. This Court will adopt Judge Blewitt's recommendation that the petition be denied for the reasons set forth more fully below.

## BACKGROUND

### 1. Factual Background

Petitioner Hamadi Souleman is a native and citizen of the Central African Republic. (Doc. 12, Ex. A.) On October 29, 2001, he was admitted to the United States as a non-immigrant B2 visitor and authorized to stay in the country until April 28, 2002; Petitioner remained in the country beyond April 28, 2002. (Doc. 12, Ex. A.) As a result, a Notice to Appear was issued stating that Petitioner was subject to removal pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").[1] (Doc. 12, Ex. A.) Petitioner did

---

[1] This section is codified in 8 U.S.C. § 1227(a)(1)(B).

not appear at his scheduled hearing and his case was administratively close on July 3, 2003. (Doc. 12, Ex. C.)

On March 10, 2004, a Criminal Complaint was issued by the Commonwealth of Pennsylvania, charging Petitioner with attempted murder, robbery, aggravated assault, and other related charges stemming from an incident where Petitioner was accused of attempting to rob a woman while she was making a drive-through deposit at a bank. (Doc. 12, Ex. D.) On November 12, 2004, these charges were dismissed. (Doc 12, Ex. D.) Petitioner was transferred to ICE custody pursuant to an immigration detainer; his motion to change the venue of his case to York, Pennsylvania was granted on November 17, 2004. (Doc. 12, Ex. C.) Petitioner filed a request for a continuance of his case, which was granted on December 9, 2004. (Doc. 12, Ex. J.) On January 4, 2005, Petitioner was released from custody under a $10,000 bond. (Doc. 12, Ex. L.)

On July 16, 2007, Petitioner was arrested following a domestic dispute with his wife.[2] (Doc. 12, Ex. G.) The charges stemming from this incident were dismissed on July 1, 2009, after Petitioner's wife, who was the complaining witness in the case, failed to appear at trial. (Doc. 12, Ex. G.)

On September 23, 2007, Petitioner was arrested on aggravated assault and related charges. (Doc. 12, Ex. H.) A hearing regarding removal proceedings against Petitioner was scheduled for July 1, 2008; the Department of Homeland Security ("DHS") and Petitioner jointly moved for a continuance of his removal proceedings until the underlying criminal

---

[2] The disposition of his previous case after being released from custody on January 4, 2005 is unclear. From the evidence, all the Court can glean is that Petitioner's "case was transferred to the immigration court, Philadelphia, which held several master hearings and at least one hearing on the merits of [Petitioner's] adjustment of status application based on an approved immediate relative visa petition filed by U.S. citizen spouse." (Doc. 12, Ex. M.)

2

charges were resolved. (Doc. 12, Ex. N.) On September 11, 2008, the criminal charges against Petitioner were nolle prossed and the case was closed. (Doc. 12, Ex. H.)

On January 14, 2009, Petitioner's motion for a continuance was granted by the immigration judge, but his motion for release on bond was denied. (Doc. 12, Exs. M, O.) Petitioner then made a request for a change in his custody status; on February 25, 2009, this request was granted and Petitioner was ordered to be released from custody under bond of $4,500. Petitioner, however, was not released from ICE custody due to failure to post his bond. (Doc. 12, Ex. M.) On March 19, 2009, DHS filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"), challenging the immigration judge's order setting the bond at $4,500. (Doc. 12, Ex. R.) The immigration judge, *sua sponte*, raised the custody bond to $15,000 on March 24, 2009. (Doc. 12, Ex. M.) The immigration judge explained that he has previously been "under the impression that the first bond amount was set at $4,500 on January 4, 2005." (Doc. 12, Ex. M.) Because the first bond amount was actually $10,000 and "to ensure [Petitioner's] continued presence at his future court hearings," the immigration judge held that it was appropriate to raise the bond amount. (Doc. 12, Ex. M.) As a result, DHS withdrew its appeal (Doc. 12, Ex. R); Petitioner has not appealed the bond amount to the BIA.

A hearing on the merits of Petitioner's removal case was scheduled for October 2, 2009. (Doc. 12, Ex. T.) On September 25, 2009, Petitioner's immigration attorney filed an evidence packet; DHS indicated to Petitioner's immigration attorney that it would object to the evidence packet because an investigation regarding the evidence was necessary. (Doc. 12, Ex. U.) Due to the late filing of this evidence, Petitioner's immigration attorney elected to seek a continuance of the case. (Doc. 12, Ex. U.)

3

The merits hearing was re-scheduled for November 19, 2009. (Doc. 12, Ex. V.) At this hearing, DHS submitted police reports corroborating Petitioner's arrests for domestic abuse, but the immigration judge expressed concern over some of the vagueness of the language in the police reports. (Doc. 19.) In light of these concerns, DHS requested the opportunity to present the testimony of the police officers who authored the reports. (Doc. 19.) This request was granted, and the case was continued to January 5, 2010. (Doc. 19.) At the January 5, 2010 hearing, Petitioner objected to the testimony of the police officers, arguing that the government had not provided a witness list or affidavits from the officers. (Doc. 19.) The case was continued by the immigration judge, who directed DHS to provide a witness list and affidavits from all police officers who DHS intended to call as witnesses; the hearing was re-scheduled for March 2, 2010. (Doc. 19.)

### 2. Procedural Background

On October 13, 2009, Petitioner filed for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner contends that his detention is a violation of the Due Process Clause of the Fifth Amendment due to the prolonged detention that bears no reasonable relation to its purpose, violation of Due Process because Petitioner has been detained without an adequate hearing, and that his $15,000 bond is unreasonable and unaffordable. On October 15, 2009, a show cause order was signed by Magistrate Judge Blewitt. (Doc. 5.) Respondents filed their response on November 19, 2009. (Doc. 12.) Petitioner filed traverse replies on January 20, 2010 and January 25, 2010. (Docs. 16-17.)

On February 18, 2010, Magistrate Judge Blewitt issued an R & R recommending that the Petition for Writ of Habeas Corpus be denied. Petitioner filed his Objections on February 24, 2010. (Doc. 21.) Petitioner also filed a supplement to his Objections on March 1, 2010.

(Doc. 22.) Respondents filed a Brief in Opposition on March 10, 2010. (Doc. 23.) This case is therefore fully brief and ripe for disposition.

**STANDARD OF REVIEW**

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**DISCUSSION**

**1. The INA Framework**

The INA has two sections that allow for the detention of aliens. 8 U.S.C. § 1226(c) makes it mandatory for the Attorney General to detain any alien who has been convicted of a class of enumerated felonies. As noted above, Petitioner has never been convicted of *any*

5

crime and, therefore, § 1266(c) is not applicable to the case at bar.[3] On the other hand 8 U.S.C. § 1226(a) gives the Attorney General the discretion to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States. It also gives the Attorney General the discretion to continue to detain the alien or release the alien on bond of no less than $1,500 or conditional parole. 8 U.S.C. § 1226(a)(1)-(2).

Judicial review of the INA is limited by 8 U.S.C. § 1226(e). That sections states that "the Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." 8 U.S.C. § 1226(e). Courts are not allowed to "set aside any action or decision . . . under this section regarding the detention or release of any alien or the grant, revocation, or denial of parole." 8 U.S.C. § 1226(e). Although this would seem to preclude this Court's review of a case such as Petitioner's altogether, the Supreme Court has held that § 1226(e) does not preclude judicial review of constitutional claims raised in a habeas petition. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding that Congress must provide a particularly clear statement of intent to preclude habeas review). To the extent Petitioner is challenging the Attorney General's discretion to arrest and detain him under the INA, this Court is precluded from reviewing to those statutory claims by § 1226(e). To the extent Petitioner is arguing that a final removal order should not be entered against him, this Court lacks jurisdiction until the final order is issued. *See Duvall v. Elwood*, 336 F.3d 228, 232 (3d Cir. 2003). As such, this Court's jurisdiction is limited to the constitutional claims raised in the

---

[3] Both parties and Magistrate Judge Blewitt focus much of their arguments on the constitutionality of detention under § 1226(c), but have overlooked the threshold question of whether that section applies to Petitioner at all. Respondents and Magistrate Judge Blewitt have applied *Demore v. Kim*, 538 U.S. 510 (2003) and *Zadvydas v. Davis*, 533 U.S. 678 (2001) and their progeny to the instant case. However, *Zadvydas* applies to detention that occurs after a final order for removal has been entered and *Demore* concerns mandatory detention pursuant to § 1226(c). Neither of these situations is applicable to the case at bar.

petition.

## 2. Length of Detention

A recent case decided by the Third Circuit Court of Appeals is directly on point with the case at bar. In *Contant v. Holder*, No. 09-1659, 2009 WL 3929186, at *1 (3d Cir. Nov. 20, 2009), the petitioner had overstayed his tourist visa and was charged with being removable pursuant to Section 237(a)(1)(B) of the INA. He was taken into custody and ordered detained without bond pursuant to § 1226(a); a redetermination hearing was held and petitioner's release on bond was denied. *Id.* Petitioner appealed to the BIA, but the immigration judge's decision was affirmed. *Id.* He then filed a habeas petition pursuant to 28 U.S.C. § 2241 "claiming that his indefinite detention without review was unreasonable and violated his right to due process." *Id.* At the time of court's opinion, petitioner had been detained for nineteen (19) months without a final removal order. *Id.* at * 2.

The Third Circuit Court of Appeals explained the procedural avenues available to aliens in the same position as the petitioner, stating

> Aliens detained pursuant to § 1226(a) may be released if they demonstrate they would not pose a danger to property or persons and they are likely to appear for any future proceedings. 8 C.F.R. § 236.1(c)(8). The alien may request a bond redetermination hearing before an [immigration judge]. 8 C.F .R. § 236.1(d)(1). An [immigration judge] may grant an alien's request for bond redetermination where the alien has shown that his "circumstances have changed materially since the prior bond redetermination." 8 C .F.R. § 1003.19(e). The alien may appeal the [immigration judge's] bond decision to the BIA. 8 C.F.R. § 236.1(d)(3). [Petitioner] was afforded the review provided by these regulations. Moreover, like the petitioner in *Kim*, Contant's unusually lengthy period of detention pending a decision on his removability is attributable to his own request for a continuance.

*Id.* at *3

The court held that petitioner's detention was not "indefinite" because the possibility

7

remained open that he could be deported if he were ordered removed and that the end of the detention was reasonably foreseeable. *Id.* Thus, the court upheld the constitutionality of the petitioner's detention.

Like the petitioner in *Contant*, Mr. Souleman is being detained for violating Section 237(a)(1)(B) of the INA. Petitioner has been ordered to be detained under a $15,000 bond. The amount of time the detentions are similar, both approximately two years. Also like *Contant*, Petitioner in the instant case has been responsible for some of the delays that have resulted in his lengthy detention. He filed a joint motion continuing his removal proceedings until his criminal charges were dropped in September 2008. In January 2009, Petitioner filed for another continuance. The removal hearing scheduled for October 2, 2009 was continued when Petitioner's attorney tried to submit evidence just before the hearing was to take place. Thus, at least part of the delay in Petitioner's removal proceedings was caused by the procedural activity of Petitioner and his immigration attorney. Also, like the petitioner in *Contant*, Mr. Souleman still has the possibility of being removed to the Central African Republic and the end of his detention is reasonably foreseeable because his removal proceedings were scheduled for a hearing on March 2, 2010. Thus, the length of Petitioner's detention is not unreasonable or unconstitutional.

### 3. The Bond Amount

Petitioner also challenges the amount of his $15,000 bond as unreasonable and unaffordable. The Eighth Amendment of the United States Constitution states that "[e]xcessive bail shall not be required." A bail amount is not constitutionally excessive merely because of the party's inability to pay. *United States ex rel. Savitz v. Gallagher*, 800 F. Supp

8

228, 233 n.13 (E.D. Pa. 1992) (citing *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988)). Bail is excessive when the amount set is greater than what is required for reasonable assurance of the presence of the defendant. *Stack v. Boyle*, 342 U.S. 1, 4-5 (1951).

In the instant case, the amount of bail is not unconstitutionally excessive. It is not excessive because it is unaffordable for Petitioner. It is also within the parameters of the amount that is required to assure that Petitioner will appear for any future removal proceedings. The immigration judge held that $15,000 would ensure Petitioner's appearance at future hearings, and this Court agrees that this is a reasonable amount to accomplish this goal. As such, the $15,000 bond amount is not constitutionally excessive.

### 4. Adequacy of Hearings

Petitioner also contends that his prolonged detention violates the Due Process Clause of the Fifth Amendment because he has not been given an adequate hearing in which the government has to prove that the detention is justified. As support for his contention that the lack of a hearing violates the due process clause, Petitioner cites *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). The section of *Zadvydas* cited by Petitioner stands for the proposition that strong procedural safeguards are necessary when the government seeks preventative detention of potentially permanent duration. *Id.* at 690-91. First, *Zadvydas* is not factual apposite in this case because it concerned aliens who were potentially being detained permanently despite having a final removal order issued against them. *Id.* at 684-85. Instead, Petitioner's removal proceedings are still pending and a final order has not been issued against him. Also, as noted earlier, Petitioner's detention, unlike the parties in *Zadvydas*, is not indefinite, but is subject to a foreseeable termination upon the completion of his removal

9

proceedings.

It is unclear precisely what additional procedural safeguards Petitioner seeks. Petitioner has received all the process that is due to him. He has had several chances to present evidence at his removal hearings, he has had the opportunity to challenge his detention and his release on bond to the immigration judge, he has been represented by counsel during his immigration proceedings, he has had the opportunity to appeal any adverse decisions to the BIA, and he will have an adequate opportunity to challenge his detention in any upcoming hearings. To the extent that Petitioner seeks to challenge the factual predicates underlying his bond redetermination, he had the opportunity to appeal to the BIA. The record shows that Petitioner did not take this opportunity. Thus, Petitioner has had adequate procedural safeguards regarding his detention and his hearings have been constitutionally sound.

## **CONCLUSION**

For the foregoing reasons, the Court will adopt Magistrate Judge Blewitt's recommendation and deny the Petition for Writ of Habeas Corpus. An appropriate order follows.

March 16, 2010  /s/ A. Richard Caputo
Date   A. Richard Caputo
  United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAMADI SOULEMAN :
:
Petitioner, :
: CIVIL ACTION NO. 3:09-cv-1981
v. :
:
WARDEN MARY E. SABOL, et al., : (JUDGE CAPUTO)
: (MAGISTRATE JUDGE BLEWITT )
Respondents. :

# ORDER

**NOW**, this 16th day of March, 2010, after consideration of Magistrate Judge Blewitt's Report and Recommendation recommending that Petitioner's petition for writ of habeas corpus be denied, and of Defendants' objections to the Magistrate Judge's Report and Recommendation, **it is hereby ORDERED** that:

1. Petitioner's Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

2. The Report and Recommendation is **ADOPTED**.

3. The Petition for Writ of Habeas Corpus is **DENIED**.

4. The Clerk of the Court is to mark the matter in this Court **CLOSED**.

                                        /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge